**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 14-42104-CJP |
| MARY ANN BRODERICK | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

**MEMORANDUM OF DECISION**

Before the Court is the *Objection to Debtor's Claim of Exemption in Property Located at 105 Mason Street, Swansea, MA* (the "Objection") filed by the Chapter 7 Trustee, David M. Nickless (the "Trustee"). Through his Objection, the Trustee challenges the exemption in the amount of $14,945.29 claimed by the debtor, Mary Ann Broderick (the "Debtor") pursuant to 11 U.S.C. § 522(d)(1)[1] in her one-half (1/2) remainder interest in property located at 105 Mason Street,[2] Swansea, Massachusetts (the "Swansea Property"). The Trustee objects to the claimed exemption because neither the Debtor, nor any dependent of the Debtor, uses that property as a residence.[3] The Debtor filed a response to the Objection (the "Response"), asserting that she has

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

[2] Although the Debtor references the property address as 103 Mason Street in Swansea, MA in her schedules, the deed recorded at the Bristol County Registry of Deeds regarding the property (Ex. 2) indicates that the correct street number is 105 Mason Street and the Debtor has also conceded that fact in her testimony at the evidentiary hearing on the Motion and in her Response.

[3] The Objection presents two questions for resolution by the Court: (1) whether the Debtor may validly claim an exemption in the Swansea Property pursuant to § 522(d)(1) given her intention to use it coupled with an inability to do so due to a medical condition preventing relocation and (2) whether the remainder interest held by the Debtor can be severed pursuant to Massachusetts law. The parties agreed to bifurcate the severability issue at the evidentiary hearing in this matter, stating an intention to take up that issue at a later date dependent on the determination of

an intention to relocate to the Swansea Property and reside there permanently, but is unable to do so because she suffers from serious medical issues that preclude her from relocating. Upon consideration of the documentary evidence and testimonial evidence of the Debtor introduced at the evidentiary hearing in this contested matter and the entire record of proceedings in this case, for the reasons stated below, under the particular facts of this case, the Court shall enter an order overruling the Trustee's Objection.

I.    <u>Jurisdiction</u>

An objection under § 522(l) to a debtor's claim of exemption is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and Local Rule 201 of the United States District Court for the District of Massachusetts.

II.    <u>Facts</u>

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 26, 2014 (the "Petition Date"), listing her street address as 6A White Road in Mendon, Massachusetts (the "Mendon Property"). The Trustee conducted the section 341 meeting of creditors on November 3, 2014. The Debtor filed amended schedules, including an amended "Schedule A – Real Property" ("Schedule A") and "Schedule C – Property Claimed as Exempt" ("Schedule C"), and a motion to approve the same (the "Motion to Amend") on January 3, 2015. The Debtor had originally claimed that she owned a contingent life estate in the Swansea Property, but, on her amended Schedule A, the Debtor listed a one-half remainder interest in the Swansea Property valued at $14,945.29. On Schedule C, the Debtor claimed an

---

whether the exemption could be properly claimed.

exemption in the Swansea Property in the amount of $14,945.29 pursuant to § 522(d)(1) (the "Exemption"). The Court (Hoffman, C.J.) allowed the Motion to Amend on February 26, 2015, reserving the Trustee's rights to pursue his Objection to the Exemption, which had been filed on January 16, 2015.

As of the Petition Date, the Debtor testified that she had lived at the Mendon Property for the past 12 years. Prior to the Mendon Property, the Debtor resided in Milford for over 10 years. The Debtor testified that the Swansea Property is her childhood home and that she has not lived there for over thirty years, although she stays there on a regular basis. When questioned by counsel to the Trustee at the hearing, the Debtor repeatedly confirmed that the Swansea Property was not her residence, but testified compellingly that it is her intention to return there permanently when her medical condition permits. She also testified to a current use of the Swansea Property to care for her parents.

The Debtor's parents, George and Olive Ventura reside at the Swansea Property and recorded a Declaration of Homestead for that property in 2005. The Quitclaim Deed granted by the Venturas, which reserved a life estate to each of them, transferred a one-half remainder interest in the Swansea Property, to the Debtor and Susan James, the Debtor's sister, as joint tenants, "without full power to mortgage, sell, convey, or otherwise encumber" the property. *See Quitclaim Deed*, Ex. 2. The Debtor conceded that the expenses she has included on her Schedule J in this case do not include expenses for care and support of George or Olive Ventura and that her parents are not her dependents.

Due to her parents' failing health and advanced ages, however, the Debtor also testified that they require her assistance for their care needs and that, accordingly, she spends

3

considerable time at the Swansea Property, including certain weekdays when she does not have dialysis treatments, weekends and holidays. The Debtor stated she keeps clothing, cosmetics, and "other sundry items" in Swansea. The Debtor also testified to the support and general cooperation of her sister, who lives in New Hampshire.

It is undisputed that the Debtor suffers from serious, chronic medical conditions. The Debtor credibly testified that the only reason she maintains the Mendon Property is as a convenience and necessity to facilitate her three weekly kidney dialysis treatments for end-stage renal disease, which treatments exhaust her, limiting her ability to drive long distances on days when she undergoes dialysis. She has not renewed a lease at her Mendon property and lives there on a month to month basis. Otherwise, the Debtor stays and sleeps at the Swansea Property.

The Debtor also testified that her husband suddenly passed away in January 2014, an event that was a sea change in her life. Prior to her husband's passing, the Debtor admitted she did not have an intention to move to the Swansea Property, but, after his death and as of the Petition Date, she intended to move to Swansea because her husband's death created significant financial hardships for her and she was concerned with her parents' health issues and care needs. The Debtor further testified that her deteriorating medical condition stemming from a medical procedure that lead to her hospitalization in the intensive care unit put her intention to return to Swansea on hold in the months leading to the Petition Date, but that she still intends to move to and reside in the Swansea Property.

In preparing to return permanently to the Swansea Property, the Debtor testified that she has researched dialysis treatment centers in the area, because a move would necessitate changing

4

her medical care providers. Presently, other than providers in Boston she does not visit on a regular basis, the Debtor's doctors are located near the Mendon Property.

### III.     Positions of the Parties

The Trustee asserts that the Debtor's Exemption in the Swansea Property must be denied because neither the Debtor nor her dependents used that property as a residence. The Debtor asserts that the Exemption taken is valid based upon her use of the Swansea Property on and prior to the Petition Date and her intention to make the Swansea Property her sole residence, which has been delayed because of serious and chronic medical conditions which prevent her from relocating. Perhaps recognizing the Debtor's acknowledgements that she does not "reside" at the Swansea Property and statements regarding her use of that property, the parties framed the issue on the record as whether the Debtor could demonstrate that she had an intention to reside at the residence permanently because such intention would be enough to bring the Exemption into the ambit of § 522(d)(1).

### IV.     Discussion

Pursuant to § 522(b)(1), "a Massachusetts debtor may exempt property from the bankruptcy estate under one of two alternative exemptions, electing either the federal bankruptcy exemptions set forth in § 522(d) or the exemptions available under state, federal non-bankruptcy or local law…." *In re Williams*, 515 B.R. 395, 399 (Bankr. D. Mass. 2014) (quotations omitted). Section 522(l) provides that claimed exemptions are presumptively valid in the absence of an objection. *See* 11 U.S.C. § 522(l). "'As a policy matter, exemption rights are to be construed liberally in the debtor's favor in view of Congress's goal of providing a meaningful fresh start

5

for debtors.'" *In re Feliciano*, 487 B.R. 47, 50 (Bankr. D. Mass. 2013) (quoting *In re Griffith*, 449 B.R. 909, 911 (Bankr. W.D. Wis. 2011)).

In the context of an exemption objection, the burden of proof is placed upon the party contesting an exemption claimed by a debtor to prove by a preponderance of the evidence that at the time of the filing of the bankruptcy petition, the debtor was not entitled to claim the exemption. *See* Fed. R. Bankr. P. 4003(c); *see also In re Genzler*, 426 B.R. 407, 418 (Bankr. D. Mass. 2010) (holding that "[p]ursuant to Fed. R. Bankr. P. 4003(c), the burden is on the trustee as the objecting party to prove the homestead is not properly claimed"). If the objecting party introduces evidence effectively rebutting the exemption, the burden of production shifts to the debtor to produce evidence to demonstrate the claimed exemption is proper, but the burden of persuasion always remains with the objecting party. *See, e.g., In re Roberts*, 280 B.R. 540, 544-45 (Bankr. D. Mass. 2001).

Section 522(d)(1) provides that "[t]he debtor's aggregate interest, not to exceed $22,975[4] in value in real property or personal property that the debtor or a dependent of the debtor uses as a residence" is exempt from a debtor's bankruptcy estate. 11 U.S.C. § 522(d)(1). Generally, the Court must interpret the language of a statute according to its plain meaning, unless doing so would lead to an absurd result. *See, e.g., Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (finding that "[i]t is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,

---

[4] The applicable value as of the Petition Date.

530 U.S. 1, 6 (2000))). While the Bankruptcy Code does not specifically define "residence,"[5] the term is not ambiguous. *See Feliciano*, 487 B.R. 47, 51; *In re Lawrence*, 469 B.R. 140, 142 (Bankr. D. Mass. 2012). "According to *Black's Law Dictionary*[,] a residence is 'the place where one actually lives,' and elaborates that a person thus may have 'more than one residence at a time.'" *Lawrence,* 469 B.R. at 142 (quoting *Black's Law Dictionary* 1423 (9th ed. 2009)); *see also In re Marsico*, 278 B.R. 1, 4 (Bankr. D.N.H. 2002) (holding that "[t]o qualify as a residence the property [in which an exemption is sought] need only be a place where the Debtor lives on more than a transient basis"). By not qualifying the term "residence" in § 522(d)(1), Congress has deliberately drawn a distinction between a debtor's residence and "principal residence," supporting the conclusion that "residence" is not limited to a debtor's principal residence and that a debtor may have more than one "residence." *Compare* 11 U.S.C. §§ 101(13A); 101(18)(A) and (B)(ii); 101(19A)(A)(i) and (B)(ii)(II); 101(27B)(A); 522(p)(2); 524(j)(1); 1123(b)(5); 1322(b)(2); 1322(c)(1) and 1322(c)(2) (referencing "principal residence") *with* 11 U.S.C. §§ 522(d)(1); 522(o)(1) and (2); and 522(p)(1)(A) and (B) (referencing "residence" only); *see also Lawrence*, 469 B.R. at 142 ("By choosing not to limit the residence qualified for exemption under § 522(d) to a principal or primary residence, Congress presumably intended to encompass a broader category than principal residences, namely any residence"). As the plain meaning of the term "residence" is not ambiguous, the Court concludes that for purposes of § 522(d)(1), a

---

[5] "Debtor's principal residence," however, is defined to mean "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property."  11 U.S.C. § 101(13A)(A).

7

debtor is not limited to a claimed exemption in a principal residence and may have more than one residence.

The second requirement for eligibility to claim an exemption under § 522(d)(1) is that a debtor or dependents of the debtor use the property as a residence. Courts have recognized that the incorporation of the present tense in the statute dictates "that usage must transcend the petition date or at least exist as of the petition date" and "where a debtor had never used a residence prior to filing, bankruptcy courts have held that the residence may not be exempted under § 522(d)." *Lawrence*, 469 B.R. at 142. Under certain circumstances, however, "[o]ccupancy may be constructive as well as actual, but there must be some positive indication of an intent to occupy the premises; an undefined floating intention is inadequate." 4 *Collier on Bankruptcy* ¶ 522.09 (16th ed. 2016); *see also Feliciano*, 487 B.R. at 51 (finding, in a case where the debtors had been absent for 17 years from an uninhabitable property in which they claimed an exemption, that debtors had failed to demonstrate any concrete plans to reestablish themselves at the property); *In re Lusiak*, 247 B.R. 699, 703 (Bankr. N.D. Ohio 2000) (defining constructive occupancy for purposes of section 522(d)(1) as "physical absence from a premises coupled with an intent to return to the premises at some point in the future"); *In re Anderson*, 240 B.R. 254, 258 (Bankr. W.D. Tex. 1999) (finding debtor was entitled to claim former residence as exempt, notwithstanding that she did not reside there as of the petition date, because debtor's military service was an "involuntary or compelled" absence from the property and that it was the debtor's intent to return to the property and occupy it as her home once her service concluded). For a debtor to establish the requisite intent to return to property from which he has been absent, "the debtor's own testimony must be coupled with external circumstances which would demonstrate

8

that it would be realistic to expect that the debtor will actually return to the property." *In re Lozada Rivera*, 470 B.R. 109, 117 (Bankr. D.P.R. 2012).

Under the facts and circumstances of this case, the Trustee has provided sufficient evidence to rebut the presumption that the Debtor has properly claimed the Exemption by legitimately questioning the Debtor's use of the property as of the Petition Date, given the Debtor's statements that she did not reside at the Swansea Property. The inquiry shifts to whether the Debtor has satisfactorily met her burden of production regarding whether she constructively or actually "used" the Swansea Property as a residence as contemplated by § 522(d)(1).[6]

Although she testified that the Mendon Property is her residence and responded in the negative to the Trustee's inquiries regarding her residence status in Swansea, the Debtor appeared to be under the misimpression that she could have only one residence. The Debtor credibly testified that she only maintains the Mendon Property as a convenience to facilitate her kidney dialysis treatments for end-stage renal disease, which fact was supported by the Debtor not renewing her Mendon Property lease and the testimony she gave regarding the effect of treatments on her day to day activities. Even though she could maintain two residences, it was clear that she did not view the Swansea Property as her sole present residence and, instead,

---

[6] The Trustee did not challenge the Exemption on the grounds that a remainder interest could not be exempted under 11 U.S.C § 522(d)(1). A remainder interest is an ownership interest in real property encompassed within estate property. *Compare In re Hajjar*, 385 B.R. 482, 488 (Bankr. D. Mass. 2008) (finding "[a]lthough the Debtor does not have a present possessory interest, and the Trustee may not sell the Property under § 363(h), the Debtor owns a one-third remainder interest in the Property which is property of the estate) *with In re Gordon*, 479 B.R. 9, 13-14 (Bankr. D. Mass. 2012) (recognizing that one-quarter remainder interest is property of the estate, but determining that the Massachusetts Homestead Statute does not apply to holders of remainder interests because a holder of a remainder interest is not among the types of enumerated "owners" under the statute).

sought to base the appropriateness of her claimed exemption on the fact that she had a constructive intention to return and establish the Swansea Property as her principal residence.

In the context of claiming the federal exemption, however, the Bankruptcy Code explicitly provides that such an exemption is not limited to a principal residence. It was clear under the circumstances that, as of the Petition Date, the Debtor regularly stayed overnight at the Swansea Property, had a purpose for being there in caring for her parents, and kept items at the Swansea Property for her own care and comfort. When this "use," coupled with what the Court finds to have been be a clear intention to reside at the Swansea Property that has been made impossible by the Debtor's medical requirements, is viewed in a light most favorable to the Debtor, the Debtor has met her burden under § 522(d)(1). *See In re DeMasi*, 227 B.R. 586, 588 (D.R.I. 1998) (holding that debtor demonstrated an intent to occupy the property "as soon as the law allows, and his actions speak louder than words from which a subjective intent can be inferred" as he attempted to move into the property at issue, but the holder of the life estate prevented him from doing so).

The Debtor testified that she did not own other property, to facts regarding her actual use of the property, and the steps she has taken in researching alternative dialysis facilities that would permit her to move into the Swansea Property. Her testimony that she suffers from chronic and serious medical conditions, which impact her ability to relocate to the residence given her setbacks after a medical procedure and her need to switch medical providers if she lived full-time at the Swansea Property, demonstrated a concrete intention to occupy that property. The Court infers from the evidence that the Debtor stays at the Swansea Property at least several days a week and has a close supportive relationship with her parents and her sister

that the intent by the Debtor to use the Swansea Property as a residence is supported and would not be contested.

V.   Conclusion

Given the Debtor's responses to questions regarding where she resides, the Trustee's objection is well-taken. However, in this case, liberally construing the claimed exemption in the Debtor's favor to facilitate her fresh start and considering the Debtor's credibility in testifying to facts establishing her actual use of the Swansea Property together with her demonstrated intent to move to the Swansea Property when she is physically able, the Court finds that the Debtor has met her burden to establish "constructive use" of the Swansea Property as a residence and claim the Exemption - notwithstanding the Debtor's statement that she does not reside at the property. As a result, the Debtor may exempt her interest in the Swansea Property under § 522(d)(1).

For the reasons set forth above, based on the unusual circumstances of this case, the Trustee's Objection to Exemptions is OVERRULED. A separate order shall enter consistent with this memorandum.

Dated: January 31, 2017                                        By the Court,

                                                               Christopher J. Panos
                                                               United States Bankruptcy Judge